Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff, a commissioned officer of the Army, received from the Government $2,624.63. This sum was paid him by *63 the disbursing officer as commutation of quarters, heat, and light allowed an officer on duty in the field or on active duty, under the act of April 16, 1918, for the maintenance of “ a place of abode ” for a dependent parent. Subsequently, in fact a long time thereafter, there was checked against his pay, in monthly sums, the total amount of $2,445.06 on the ground that the dependent parent for which the allowance was granted was not a dependent parent within the meaning of the law, she being the stepmother of the plaintiff. The act of April 16, 1918 (40 Stat. 530), is in terms as follows:
“An act to provide quarters or commutation thereof to commissioned officers in certain cases.
“Be it enacted, ete., That during the present emergency every commissioned officer of the Army of the United States on duty in the field, or on active duty without the territorial jurisdiction of the United States, who maintains a place of abode for a wife, child, or dependent parent, shall be furnished at the place where he maintains such place of abode, without regard to personal quarters furnished him elsewhere, the number of rooms prescribed by the act of March 2, 1907 (34 Statutes at Large, 1169), to be occupied by, and only so long as occupied by, said wife, child, or dependent parent; and in case such quarters are not available every such commissioned officer shall be paid commutation thereof and commutation for heat and light at the rate authorized by law in cases where public quarters are not available; but nothing in this act shall be so construed as to reduce the allowances now authorized by law for any person in the Army.”
A vigorous contention is advanced by the plaintiff that a stepmother falls within the meaning of the term “ parent.” The defendant cites cases to the contrary. We do not think-it essential to decide the issue. The Congress on May 26, 1926 (44. Stat. 654), enacted the following remedial legislation, to wit:
“An act to validate payments for commutation of quarters, heat, and light, and of rental allowances on account of dependents.
“Be it enacted, etc., That the Comptroller General of the United States is hereby authorized and directed to allow credit in the accounts of disbursing officers for payments of commutation of quarters, heat, and light under the act *64 approved April 16, 1918 (40th Statutes, page 530), because of a dependent parent, and as rental and subsistence allowance under the act of June 10, 1922 (42d Statutes, page 625), because of a dependent mother, made in good faith by disbursing officers prior to July 1, 1923: Provided, That where the payee responded to a needy family condition in an amount at least equal to the allowances obtained by him no collection shall be made on account of payment of the allowances to him prior to July 1, 1923; and amounts heretofore collected as refund of the allowances obtained in such cases prior to July 1, 1923, notwithstanding the protest of the payee, either by stoppage of pay, payment in cash, allotment of pay, or offset, shall be refunded; but this proviso shall not be applicable where the payee has admitted there was no dependency on him, or where he has refused to furnish evidence of the dependency, or where the payee has voluntarily refunded the payments in whole or in part, or has submitted no claim for the allowances in the nature of a protest against offset of his pay as refund of the payments.”
Manifestly the foregoing remedial legislation was intended to validate administrative action theretofore taken under the act of April 16, 1918, which would have or might have fallen outside its provisions and occasioned loss to the disbursing officers who had acted in good faith with respect thereto. Not only this, Congress further extended relief to payees who had actually “ responded to a needy family condition in an amount at least equal to the allowances obtained by him * * * prior to July 1, 1923.” The proponent of the legislation was the General Accounting Office, and the official representative expressly stated at the hearing upon the bill that it was intended to meet precisely such a case as we have here.
The defendant does not challenge the scope or intent of the act of May 26, 1926. The defense interposed is predicated wholly upon an issue of fact, i. e., that the plaintiff has not sustained by proof the payment of advances to his stepmother in an amount equal to the allowances obtained by him. We think the record is to the contrary and have so found. The plaintiff from the age of five until twenty years not only resided with and was cared for by his stepmother, but was entirely ignorant of the fact that she was *65 not his mother. His affection for and relations with her were those of parent and child. During the period involved he cared for her, not only paying fixed charges of rent and -board, but in addition supplying the funds for the inevitable incidentals attendant upon household expenditures by one in her position. The stepmother’s sole individual income was a small pension paid her by the Government as the widow of a soldier. During the latter period of her life serious illness forced her into a hospital and the expenses incident to her last illness were paid by the plaintiff. True, he is unable to produce canceled checks paid ten or more years ago, or to furnish itemized accounts of expenditures, but the want of such proof is supplied by the uncontradicted testimony of the plaintiff as to the facts in the case, and the surrounding conditions under which the stepmother lived That the plaintiff responded to a needy condition is not challenged.
Judgment for plaintiff for $2,445.06. It is so ordered.
Williams, Judge; LittletoN, Judge; Green, Judge; and 'Graham, Judge, concur.