Littleton, Judge,
delivered the opinion of the court:
On the question whether plaintiff’s mother during the period of the claim beginning Februaxy 1, 1933, was in fact dependent upon him for her chief support, the defendant concedes that she was so dependent under the rule applied and followed by this court (Tomlinson v. United States, 66 C. Cls. 697), even under the theory of the defendant that the total gross income of $700 a year from property of her husband’s estate was income of the mother in her own legal right. This total gross income was less than half of the reasonable and necessary living expenses of plaintiff’s mother, as shown by the record, of $1,596 a year. However,, the gross income of $700 a year from the property from which it was received was not exclusively the income of plaintiff’s mother. Legally and in fact, as shown by the record, and as the defendant was expressly advised October 16, 1922, the plaintiff’s mother had only a one-third interest in the property which produced this income, and therefore the separate gross income, of plaintiff’s mother in her own right was not more than $19.44 a month. The fact that plaintiff and his brother, W. G. White, who each had and still have a one-third interest in the property, permitted their mother to have and use their portions of the income *405 for her maintenance and support does not affect the question whether the contributions which plaintiff otherwise made to his mother in cash during the period of the claim constituted her chief support. The manner in which the property of the estate of plaintiff’s father was handled by the mother and the two sons represented as to plaintiff an additional contribution by him to his mother insofar as his interest in the property and income therefrom were concerned.
Plaintiff’s father died October 12, 1918, and in a will which was probated April 30, 1919, he left all of his property, real and personal, to his wife and two sons, share and share alike. None of the property was sold, the parties in interest agreeing, instead, to keep it intact and to invest the insurance proceeds. Plaintiff’s mother was executrix of the estate. The amount of $10,000 of the net insurance proceeds of $12,000 was invested in a mortgage, producing an income at 6 percent, but plaintiff had a one-third interest in this investment and the income therefrom, to the extent of his interest, he gave to his mother to use for her support.
In view of the facts set forth in the findings and what we have said above with reference to the extent of the interest of plaintiff’s mother in the property of her husband’s estate, we think it is clear that the defendant’s counterclaim for alleged overpayments allowed and made to plaintiff under the Act of April 16, 1918, 40 Stat. 530, is without merit, especially in view of the provisions of the Act of May 26, 1926, 44 Stat. 654. The theory of the counterclaim is that the entire property of the estate of plaintiff’s father was in law and in fact the property of plaintiff’s mother. On that theory it is contended that plaintiff did not at any time during the periods of the counterclaim maintain t£a place of abode for a * * * dependent parent” within the meaning of the Act of April 16,1918, supra, and that he was therefore not entitled to any allowance as commutation for quarters for himself and dependent, if not furnished by the Government, and commutation for heat and light. During the periods of the counterclaim,,as set forth in finding 10, plaintiff regularly contributed $100 a month to his *406 mother for her support and maintenance and in addition his one-third interest in the home in which she lived. W. G. White lived in the home with the mother and made some-contributions to the mother as set forth in finding 11. Plaintiff’s contribution to his mother, represented by his interest in the home property and the $100 a month, constituted a maintenance of a place of abode for his mother within the meaning of the Act of 1918. In any event, any doubt as to this was removed by the Act of May 26, 1926) supra, which directed the Comptroller General to allow credits in the accounts of disbursing officers for payments of commutation of quarters, heat, and light under the Act of April 16, 1918, supra, because of a dependent parent, and as rental and subsistence allowance under the Act of June 10, 1922, 42 Stat. 625, because of a dependent mother, made in good faith by disbursing officers prior to July 1, 1923 “where the payee responded to a needy family condition in an amount at least equal to the allowances obtained by him.”' The circumstances disclosed by the record and the contributions made by plaintiff during the periods of the counterclaim show that he responded to a needy family condition within the meaning of the act last referred to in a total' amount far in excess of the allowances paid to him. Halloran v. United States, 69 C. Cls. 59.
The defendant’s counterclaim is dismissed, and judgment will be entered in favor of plaintiff for the amount due from February 1, 1933 (Tricou v. United States, 71 C. Cls. 356; Page v. United States, 73 C. Cls. 626), to date of judgment upon the filing of a report by the General Accounting Office showing the amount due in accordance with the foregoing findings of fact and opinion. It is so ordered.
Madden, Judge; Jones, Judge; Whitaker, Judge; and Whaley, Chief Justice, concur.
On March 2,1942, upon a report from the General Accounting Office, showing the amount due under the court’s decision of January 5, 1942, judgment was entered for the plaintiff in the sum of $10,031.71.